UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

FRANCIS BROZZO,

                        Plaintiff,

-against-                                       7:14-CV-1584 (LEK/TWD)

UNITED STATES DEPARTMENT OF
EDUCATION,

                        Defendant.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Pro se Plaintiff Francis Brozzo commenced the present action against the United States Department of Education ("DOE") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Dkt. No. 1 ("Complaint"). On November 17, 2015, Defendant filed a motion for summary judgment. Dkt No. 28. The Court denied the motion on September 9, 2016, but permitted Defendant to renew its motion within ninety days of the Court's decision. Brozzo v. U.S. Dep't of Educ., No. 14-CV-1584, 2016 WL 4734650, at *6–7 (N.D.N.Y. Sept. 9, 2016) (Kahn, J.). Presently before the Court is Defendant's Renewed Motion for Summary Judgment, Dkt. Nos. 54-1 ("Motion"), 54-2 ("Defendant's Memorandum"), 54-3 ("Defendant's Exhibits"), 54-4 ("Defendant's Statement of Material Facts"), as well as Plaintiff's Cross-Motion for Summary Judgment, Dkt. Nos. 55 ("Cross-Motion"), 55-1 ("Plaintiff's Exhibits"), 55-2 ("Plaintiff's Memorandum"), 55-3 ("Plaintiff's Statement of Material Facts"). For the following reasons, Defendant's Motion is granted and Plaintiff's Cross-Motion is denied.

## II. BACKGROUND

### A. FFEL and Guaranty Agency Overview

The Federal Family Education Loan ("FFEL") programs are student-loan programs through which lenders loan money for the cost of attending a post-secondary school. Def.'s Exs., Ex. T, ¶ 2. These loans are "held by the lender, and guaranteed by an agency under agreement with the Secretary of [the Department of] Education . . . to administer a loan guarantee program." Id. ¶ 5. If a borrower defaults on one of the loans, the lender assigns it to a guaranty agency ("GA"), and the GA becomes the holder of the loan. Id. ¶ 6. Then, the GA is "reimbursed by the Secretary for all or part of the amount of default claims it pays to the lenders." Id. Unless the loan is assigned to Defendant, however, Defendant is not the holder of the loan. Id. ¶ 8.

It is undisputed that in April 1993, Plaintiff defaulted on ten of his outstanding FFEL loans. Def.'s Mem. at 4. These loans were assigned to the New York State Higher Education Services Corporation ("NYSHESC") in 1994 for collection. Id. In 2008, after NYSHESC obtained a judgment in state court against Plaintiff, his loans were transferred to the Education Credit Management Corporation ("ECMC"). Id. ECMC thereby became the holder of the loans. Id. The loans, and their documents, were never assigned or transferred to Defendant. Id. Further, the agreements between the entities do not "grant [Defendant] regular access to GA records until such time as the loan has been assigned to [Defendant]." Def.'s Exs., Ex. T, ¶ 9.

### B. Plaintiff's FOIA Request

By letter dated July 29, 2014, Plaintiff requested documents pertaining to his student loans from Defendant. Def.'s SMF ¶ 2; Plaintiff's Response Statement of Material Facts ("Pl.'s Resp. SMF") ¶ 2. Specifically, Plaintiff requested: (1) "[a] copy of any/all claims for

2

reimbursement of defaulted loans made by Key Bank," the lender, to the NYSHESC, the guarantor; (2) "[a] copy of all documents showing NYSHESC['s] payment of . . . reimbursement claims" from Plaintiff's student loan debts made to Key Bank; (3) "[a] copy of all documents showing NYSHESC['s] reinsurance claim []concerning" Plaintiff's defaulted student loans that were submitted to Defendant; (4) "[a] copy of all documents showing [Defendant's] approval of NYSHESC['s] reinsurance claim[s]; and (5) "[a] copy of documents showing NYSHESC's assignment and transfer of title of [P]laintiff's loans to [Defendant], including . . . documents showing any reimbursement of costs related to assignment and transfer of title . . . paid by [Defendant] to NYSHESC or paid by NYSHESC to [Defendant]." Def.'s SMF ¶ 2.

Plaintiff's request was received in Defendant's FOIA Service Center and forwarded to Ann Marie Pedersen, Director of the Correspondence Unit within the Communications Office of Defendant's Office of Federal Student Aid ("FSA"). Def.'s SMF ¶¶ 2, 9; Pl.'s Resp. SMF ¶¶ 2, 9. FSA's Business Operations Group compiled documents related to Plaintiff's request and sent them to him. Def.'s SMF ¶ 4; Pl.'s Resp. SMF ¶ 4–5. The documents, which Plaintiff received on September 13, 2014, included: (1) "[a] copy of [Plaintiff's] National Student Loan Data System (["]NSLDS["]) aggregate loan history; (2) "[a] copy of the Transitional Guaranty Agency's organizational contact list; (3) "[a] copy of the contact information for Key Bank"; and (4) contact information for Borrower Services, Customer Care Group, Key Bank of New York, and Transitional Guarantee Agency. Def.'s SMF ¶¶ 5–6; Pl.'s Resp. SMF ¶¶ 5–6.

On September 13, 2014, Plaintiff appealed Defendant's action, alleging that Defendant failed to provide him with the documents he requested or "the legal basis for the denial of his request." Def.'s SMF ¶ 7; Pl.'s Resp. SMF ¶ 7. Defendant responded to Plaintiff's appeal by

letter dated September 29, 2014, informing Plaintiff that an administrative review of his request was underway. Def. SMF ¶ 8; Pl.'s Resp. SMF ¶ 8.

### C. Procedural History

The procedural history of this case is set out in detail in the Court's previous order. Brozzo, 2016 WL 4734650, at *2. There, the Court held that Defendant was entitled to rely solely on Ms. Pedersen's declaration to demonstrate that (1) it performed an adequate search and (2) no documents were improperly withheld from Plaintiff. Id. at *5. Reliance on the declaration was permitted because the Court found it to (1) provide sufficient detail regarding Defendant's search, (2) be non-conclusory, and (3) meet the standard for the presumption of good faith. Id. Defendant's first Motion for Summary Judgment was denied, however, because Defendant had not met its burden of showing that the requested records were not "agency records" in the context of FOIA. Id. at *5–6. The Court gave Defendant permission to renew its motion in order to meet this burden. Id. at *7.

Defendant submitted the instant Motion on December 9, 2016. Mot. With its Motion, Defendant submitted a new declaration from Pedersen, which outlines Defendant's actions in response to Plaintiff's request and states that the requested documents were not DOE records. Def.'s Exs., Ex. T, ¶¶ 8–14. Defendant argues that the records were not agency records because "they were not created or obtained by D[efendants] and were not controlled and/or maintained by D[efendants], at the time of [P]laintiff's FOIA request." Def.'s Mem. at 6. Thus, Defendant contends that summary judgment is appropriate. Id. at 12. On December 30, 2016, Plaintiff submitted a Cross-Motion in which he argues that the records are agency records because (1)

Defendant is the holder of Plaintiff's loans (2) the records were in Defendant's control at the time of the FOIA request and (3) the records were integrated into Defendant's files. Pl.'s Mem. at 10.

Defendant filed a response in opposition to this Cross-Motion on January 19, 2017. Dkt. Nos. 60 ("Defendant's Opposition"); 60-1 ("Defendant's Opposition Exhibits"); 60-2 ("Response to Plaintiff's Statement of Material Facts"). Attached to Defendant's Opposition was a supplemental declaration by Ms. Pedersen, which further explains her assertion that although Defendant is a claim holder, it is not the loan holder. Def.'s Opp'n Exs., Ex. AA, ¶¶ 1–5. Defendant further argues that the evidence submitted does not demonstrate that it had control over the requested documents. Def.'s Opp'n at 1. In so doing, Defendant challenges Plaintiff's analysis and interpretation of the DOE regulations. Id. at 1, 3–4. The Court issued a Text Order on January 30, 2017, giving Plaintiff the option to file a sur-reply, as Defendant's Response contained evidence and arguments raised for the first time. Dkt. No. 63. Plaintiff filed a sur-reply on February 10, 2017. Dkt. No. 64 ("Sur-Reply"). In his Sur-Reply, Plaintiff contends that the agreements between Defendant and ECMC show Defendant has control over the loans, in part, because they contain tasks requested by Defendant to ECMC, which resulted in changes to ECMC's financial operations. Sur-Reply at 6–7. Plaintiff also claims that Defendant has an "unfair advantage" because the agency is the only party with "access to all the facts." Id. at 9.

### III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie

5

if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party carries the ultimate burden of proof and has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV. DISCUSSION

FOIA "requires federal agencies to release certain documents in response to requests from the public." Labella v. FBI, No. 11-CV-23, 2012 WL 948567, at *6 (E.D.N.Y. Mar. 19, 2012) (quoting Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006)). The purpose of FOIA is to "promote honest and open government," Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 478 (2d Cir. 1999), and "to ensure public access to information created by the government in order to hold the governors accountable to the governed," Tigue v. U.S. Dep't of Justice, 312 F.3d 70, 76 (2d Cir. 2002). FOIA provides that, following an appropriate request for records, an agency "shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

In its previous order, the Court ruled that (1) there is no reason to set aside the Pedersen declarations' presumption of good faith and (2) Defendant is entitled to rely solely on the declarations to demonstrate that it performed an adequate search and that no documents were improperly withheld from Plaintiff. Brozzo, 2016 WL 4734650, at *5; see also Grand Cent. P'ship, 166 F.3d at 478 (noting that a court in a FOIA case can grant summary judgment on the sole basis of agency affidavits as long as they are non-conclusory and are not called into question by contradictory evidence or evidence of bad faith); Wilner v. Nat'l Sec. Agency, 592 F.3d 60, 69 (2d Cir. 2009) (same); Wood v. FBI, 432 F.3d 78, 85 (2d Cir. 2005) (upholding a district court's decision that found declarations submitted by the government to be sufficient since they were detailed, nonconclusory, and submitted in good faith). Thus, the parties' motions, as well as this order, turn on whether the requested documents constitute "agency records" under FOIA.

FOIA empowers district courts "to order the production of any agency records improperly withheld." U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 (1989) (quoting 5 U.S.C. §

7

552(a)(4)(B)). Under FOIA, agencies are required "to review, manually or by automated means, agency records for the purpose of locating those records, which are responsive to a request." 5 U.S.C. § 552(a)(3)(D). Documents are considered "agency records" within the meaning of FOIA when two criteria are met: (1) the agency created or obtained the records and (2) the agency was in control of the records at the time of the FOIA request. Tax Analysts, 492 at 144–45; Fox News Network, LLC v. Bd. of Governors of the Fed. Reserve Sys., 601 F.3d 158, 160 (2d Cir. 2010). Agencies bear the burden of demonstrating that the records sought in a FOIA request are not agency records. Tax Analysts, 492 U.S. at 142 n.3.

As to the "created or obtained" prong of the Tax Analysts test, "'FOIA applies to records which have *in fact* been obtained' or created." Ctr. for Medicare Advocacy, Inc. v. U.S. Dep't of Health & Human Servs., No. 10-CV-645, 2011 WL 2119226, at *3 (D. Conn. May 26, 2011) (quoting Forsham v. Harris, 445 U.S. 169, 186 (1980)). Documents that an agency could have acquired are not agency records "unless and until that right is exercised." Forsham, 445 U.S. at 181. Courts are split on whether this standard can be met if an agency *constructively* obtains and controls the records. See Am. Small Bus. League v. U.S. Small Bus. Admin., 623 F.3d 1052, 1054 (9th Cir. 2010) (per curiam) (noting that only a handful of courts have applied the constructive control and obtainment theory, while others have rejected it). Compare Ctr. for Medicare Advocacy, Inc., 2011 WL 2119226, at *4 (questioning the validity of the constructive control and obtainment theory), and Bloomberg v. Bd. of Governors of the Fed. Reserve Sys., 649 F. Supp. 2d 262, 275 (S.D.N.Y. 2009) (holding that Supreme Court precedent bars application of the theory), with Missouri ex rel. Garstang v. U.S. Dep't of the Interior, 297 F.3d

8

745, 751 (8th Cir. 2002) (applying the theory), and Burka v. U.S. Dep't of Health & Human Servs., 87 F.3d 508, 515 (D.C. Cir. 1996) (same).

As to the second prong of the Tax Analysts test, the D.C. Circuit has held that a court should assess whether an agency controls the records at the time of a FOIA request using the following factors:

> (1) the intent of the document's creator to retain or relinquish control over the record, (2) the ability of the agency to use and dispose of the record as it sees fit, (3) the extent to which agency personnel have read or relied upon the document, and (4) the degree to which the document was integrated into the agency's record systems or files.

Burka, 87 F.3d at 515.

Notably, neither the Second Circuit nor any district courts within the circuit have applied the Burka standards. Ctr. for Medicare Advocacy, Inc., 2011 WL 2119226, at *4. In fact, at least one court within this circuit rejected the theory and applied a narrower interpretation of Forsham and its progeny. See Bloomberg, 649 F. Supp. 2d at 275 ("The Supreme Court's teachings in Tax Analysts, Forsham, and Kissinger certainly do not compel adoption of the constructive obtainment and control theory, and thus this Court declines to do so under the facts presented here."). It is not necessary for the Court to reach the question of whether Burka's constructive obtainment and control theory applies, however, because Defendant has met its burden of proving that the requested documents are not agency records regardless of whether the theory applies.

The supervision and control that existed in Burka were much more extensive than the alleged supervision and control here. In Burka, the agency was deemed to have constructively obtained the documents because the agency (1) ordered their creation, (2) planned to take

9

possession of them at a definitive point, (3) prohibited the entities involved with the documents from making any independent disclosures, and (4) "read and relied significantly on the information in writing articles and developing agency policies." 87 F.3d at 515.

Although the D.C. Circuit will consider records to be agency records if the agencies have access to them, the access and supervision must be much more significant than that which Defendant had over the documents requested by Plaintiff. In fact, the agency must have either used them or integrated them into its files. Judicial Watch, Inc. v. Fed. Hous. Fin. Agency, 646 F.3d 924, 927 (D.C. Cir. 2011); see also Beveridge & Diamond, P.C. v. U.S. Dep't of Health & Human Servs., 85 F. Supp. 3d 230, 237, 239–40 (D.D.C. 2015) (ruling that extensive supervision and control over documents did not exist because the agency (1) did not have the ability to use and dispose of them, (2) never had possession of them, (3) had no involvement in their creation, and (4) had no plans to obtain them).

Further, in the widely cited In Defense of Animals v. NIH, the District Court for the District of Columbia applied the constructive obtainment and control theory and found that the requested records were agency records, but the supervision and access were much more extensive than in the instant case. 543 F. Supp. 2d 83, 100–01 (D.D.C. 2008). There, the court decided that the requested records were "agency records" after finding that the agency (1) owned the facility where the documents were kept, (2) owned some of the documents and had full access to others, and (3) actually received at least one report that some of the files were being created on-site. Id.

Defendant does not possess the level of supervision and control necessary for documents to be considered agency records under the constructive obtainment and control theory. Just as in Judicial Watch, Inc., the requested documents were never used or integrated into Defendant's

records or files. Def.'s SMF ¶ 25; Pl.'s Resp. SMF ¶ 25. Next, it is undisputed that the records were not actually created by Defendant; and the records were not created on Defendant's behalf or even created with the expectation that the loans (and thus access to the records) would ever be assigned to Defendant, "as the vast majority of FFEL borrowers repay their loans." Def.'s SMF ¶ 17; Pl.'s Resp. SMF ¶ 17.

Plaintiff's reliance on 34 C.F.R. § 682.414(a)(6)(i) to show that Defendant has control of the records is misplaced. First, that provision only concerns affidavits or testimony required by Defendant to establish the admissibility of loan records at a legal proceeding. 34 C.F.R. § 682.414(a)(6)(i)(A)–(B). Second, a plain reading of the regulation reveals that Defendant's right to request materials is limited to loans that have been assigned to it. See id. § 682.414(a)(6)(i) ("Upon the Secretary's request with respect to a particular loan or loans assigned to the Secretary . . . the guaranty agency . . . must cooperate with the Secretary."). Plaintiff's reading of the regulation, that the Secretary can request materials concerning either (1) any loan, regardless of its assignment, or (2) loans assigned to the Secretary, is erroneous because it would render the "assigned to the Secretary" language superfluous. See United States v. Jicarilla Apache Nation, 564 U.S. 162, 185 (2011) (noting that courts should refrain from interpreting a legislative act in a way that renders another portion of the act superfluous). But even if Defendant could request and obtain Plaintiff's requested records under the regulation, they would still not constitute agency records because Defendant did not use or integrate them into its file system. Judicial Watch, 646 F.3d at 927.

Additionally, the agreements between NYSHESC and Defendant establish that the GA is the holder of the loan, and not Defendant. Def.'s Exs., Ex. U. The form letter sent by ECMC,

11

which states that Defendant holds a claim against Plaintiff, does not show that Defendant is the holder of the loan either. Def.'s Opp'n. Exs., Ex. AA, ¶¶ 13–15. Defendant is the holder of a claim on the defaulted loans since it "will receive 84% of the funds collected by the GA," but it is not the holder of the loan. Id. Holding a claim on a loan is not the same as actually possessing the requested documents.

Defendant has met its burden of demonstrating that the records in question are not "agency records" in the context of FOIA, as they were not created or obtained by Defendant and are not under its control. Thus, Defendant's Motion for Summary Judgment is granted, and Plaintiff's Cross-Motion for Summary Judgment is denied.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion for Summary Judgment (Dkt. No. 54-1) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Cross-Motion for Summary Judgment (Dkt. No. 55) is **DENIED**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: May 11, 2017
Albany, New York

Lawrence E. Kahn
U.S. District Judge